1
2
3
4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    GRID ONE SOLUTIONS, INC.,                Case No.  15-cv-03452-JSW

8                       Plaintiff,

9           v.                                **ORDER GRANTING MOTION TO
                                              DISMISS AND GRANTING, IN PART,
10   ELSTER AMCO WATER, LLC,                  MOTION TO STRIKE AND
                                              INSTRUCTIONS TO PARTIES**
11                     Defendant.
                                              Re: Docket Nos. 19, 20
12

13          Now before the Court for consideration are the motion to dismiss and the motion to strike,

14   filed by Defendant Elster Amco Water, LLC ("Elster").  The Court has considered the parties'

15   papers, relevant legal authority, and the record in this case, and it has had the benefit of oral

16   argument.  The Court HEREBY GRANTS Elster's motion to dismiss, GRANTS, IN PART,

17   Elster's motion to strike, and it GRANTS, Plaintiff Grid One Solutions, Inc. ("GOS") leave to file

18   an amended complaint.

19                                   **BACKGROUND**

20          On January 6, 2010, GOS and the City of San Francisco (the "City"), through the San

21   Francisco Public Utilities Commission ("SFPUC"), entered into an "Agreement for Procurement,

22   Installation and Implementation of an Advanced Meter Infrastructure System" (the "Prime

23   Contract."  (*Id.* ¶ 6, and Ex. A (Prime Contract).) [1]

24          According to GOS, the City wanted to implement an Advanced Meter Infrastructure

25   System (the "AMI Project"), and as part of the AMI Project wanted to: (1) acquire meter data from

26   residential and commercial customers and to deliver meter data to the City to achieve reliable and

27   _____

28   [1]      At the time it entered into the Prime Contract, GOS was known as VSI Meter Services,
     Inc.

United States District Court
Northern District of California

accurate reporting of water usage; (2) purchase a new AMI radio based automatic meter reading system that was compatible with all meters that the City had installed; (c) remove and/or retrofit existing water meters and install new maters, and/or registers, and meter interface units ("MTUs"); and (d) create an effective interface between the City's Customer Information System ("CIS") and the AMI system.  The SFPUC wanted to "collect hourly consumption data from its retail water customers to more efficiently manage its water resources and water system assets in San Francisco, and to provide enhanced service to residential and commercial customers."  (Compl. ¶¶ 7-9; *see also* Prime Contract at 9, Recitals, ¶ 1, Compl. Ex. B (Material Supply Agreement ("MSA"), Recitals).)

On November 30, 2009, GOS and Elster entered into the MSA, whereby Elster agreed to provide GOS with certain "AMI products, materials and services" that GOS needed to perform its obligations under the Prime Contract.  (*Id.* ¶¶ 3, 10.)  The MSA also required that the products would conform in all material respects to the technical specifications and performance standards and that the services would materially comply with requirements set forth in the Prime Contract. (Compl. ¶¶ 13-14; *see also* MSA, Article II.A.15.)

On March 1, 2011, the City issued a notice of Non-conforming Work and Direction to Correct ("First Non-conforming Work Notice"), and it notified GOS that some of the AMI Project's system components "did not comply with the meter read accuracy/transmission accuracy requirements set forth in the Prime Contract[.]"  (*Id.* ¶ 15, and Ex. C (First Non-conforming Work Notice).)  GOS, in turn, notified Elster of the First Non-conforming Work Notice.  (*Id.* ¶ 16, and Ex. D.)  Ultimately, after the City initiated a Proposed Change Order, GOS and Elster modified the MSA to address the issues raised by the First Non-conforming Work Notice and the proposed solutions to resolve the alleged non-conformities.  (*See generally id.* ¶¶ 18-21, 26-27, and Ex. E ("Modification No. 1").)  GOS alleges that it suffered a variety of damages because the Elster Product did not conform with specifications set forth in the Prime Contract.  (Compl. ¶ 28.)

According to GOS, Elster also was unable to supply GOS the contractually required number of products between December 2010 and August 12, 2011, which resulted in two Project shutdowns and "decreases in productivity averages."  (*Id.* ¶ 29.)  Specifically, "Elster's inability to

1    supply GOS the various meter sizes it required for installation caused GOS to skip routes, reduce

2    its average meter install rate, prevented GOS from ramping up to full installation staff and resulted

3    in layoffs and Project shutdowns."  (*Id.* ¶ 30.)

4         On August 6, 2013 and August 14, 2013, the City issued two notices of non-conformance

5    ("Second Non-conforming Work Notice"), and GOS notified Elster of the notices of non-

6    conformance.[2]  (*Id.* ¶¶ 31-33, Exs. F-G.)  The non-conformities caused the Project to shut down

7    for approximately 70 weeks, but GOS was "contractually required to maintain its management and

8    field presence, which directly resulted in extended general conditions and home office overhead

9    being incurred by GOS."  (*Id.* ¶ 34.)  GOS and Elster subsequently modified the MSA

10   ("Modification No. 2").  (*Id.* ¶ 34, Ex. H (Modification No. 2).)

11        Based on these, and other allegations, which the Court shall address as necessary, GOS

12   asserts one claim of breach of contract against Elster for: (1) failure to timely supply GOS the

13   contractually required number products; (2) providing products that did not conform with meter

14   read accuracy/transmission accuracy requirements; (3) providing products that did not conform in

15   all material respects to the technical specifications and performance standards; (4) concealing the

16   product's inability to meet the AMI Project's performance specifications; and (5) failing to

17   indemnify GOS.

18   **A.    Applicable Legal Standards.**

19        **1.    Motion to Dismiss for Failure to State a Claim.**

20        A motion to dismiss is proper under Rule 12(b)(6) where the complaint fails to state a

21   claim upon which relief can be granted.  The Court's "inquiry is limited to the allegations in the

22   complaint, which are accepted as true and construed in the light most favorable to the plaintiff."

23   *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal

24   pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide

25   the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

26   formulaic recitation of the elements of a claim for relief will not do."  *Bell Atlantic Corp. v.*

27

28   _____
     [2]       GOS has attached the notice dated August 6, 2013 to the Complaint.

3

1   *Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

2           Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

3   must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A

4   claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw

5   the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v.*

6   *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If the allegations are

7   insufficient to state a claim, a court should grant leave to amend, unless amendment would be

8   futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss &*

9   *Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

10          **2.      Motion to Strike.**

11          A court may strike from a pleading "any insufficient defense or any redundant, immaterial,

12  impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Immaterial matter "is that which has no

13  essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy*

14  *Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v.*

15  *Fantasy, Inc.*, 510 U.S. 517 (1994) (internal citations and quotations omitted). Impertinent

16  material "consists of statements that do not pertain, or are not necessary to the issues in question."

17  *Id.*

18          Motions to strike are regarded with disfavor because they are often used as delaying tactics

19  and because of the limited importance of pleadings in federal practice. *Colaprico v. Sun*

20  *Microsystems Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). A motion to strike should be

21  resorted to only when the matter to be stricken could have no possible bearing on the issues in

22  litigation. *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992). The

23  possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause

24  the trier of fact to draw unwarranted inferences at trial is the type of prejudice that is sufficient to

25  support the granting of a motion to strike. *California Dept. of Toxic Substances Control v. Alco*

26  *Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). Ultimately, the decision as to whether

27  to strike allegations is a matter within the Court's discretion. *Colaprico*, 758 F. Supp at 1339.

28

United States District Court
Northern District of California

4

**B.     The Court Grants the Motion to Dismiss, with Leave to Amend.**

GOS has asserted one claim for breach of contract, the essential elements of which are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff.  *Reichert v. General Insurance Co.*, 68 Cal. 2d 822, 830 (1969).  Elster argues that GOS has not, and cannot, allege facts supporting the fourth element of the claim, because Article V.B.(2) of the MSA precludes GOS from recovering consequential and incidental damages.

In its opposition brief, and at the hearing, GOS argued that Article II.A.3 of the MSA permits it to recover the damages it seeks.  It also argued that "Elster's failure to deliver conforming Products and Services is tantamount to a complete failure to meet the delivery schedule."  (*See, e.g.,* Opp. Br. at 1:16-17.)  GOS also argues that Article V.B(2) is not enforceable, either because Elster's actions caused Article.II.A.3 to "fail[] for its essential purpose," or because Elster's alleged breach is "total and fundamental."  (Opp. Br. at 2:17-22.)

The Court finds that the allegations are insufficient to show a breach of Article II.A.3, and that GOS would be entitled to the damages described therein for such a breach.  GOS does allege that Elster failed to meet a product delivery schedule, and the MSA includes has an attachment identified as "Schedule 1 - Estimated Meter Delivery Time," but GOS has not included a copy of that schedule with the Complaint.  In addition, Article II.A.3 states that Elster would have no liability under that provision "unless it's [*sic*] delivery is more than seven days past an agreed upon due date…."  (MSA, Article II.A.3.)  GOS has not included any facts about the timing of delivery, so the Court cannot determine if there are sufficient facts to support a breach.

In addition, although GOS alleges the AMI Project was shut down for an extended period of time, without additional facts, the Court cannot say it is a reasonable inference that the failure to provide non-conforming product is "tantamount to a complete failure to meet the delivery schedule," such that Article II.A.3 would fail for its essential purpose.  Similarly, the facts alleged are insufficient to demonstrate that the failure to provide product was so fundamental that Article

1    V.B(2) should not be enforced.[3]  *See, e.g., Beltran v. Capitol Records, LLC,* No. 12-cv-1002-

2    YGR, 2012 U.S. Dist. LEXIS 82025, at *6 (N.D. Cal. June 13, 2012).

3          Accordingly, the Court grants the motion to dismiss.  However, because the Court

4    concludes it would not be a futile act, it grants GOS leave to amend to cure the deficiencies

5    identified above.

6    **C.     The Court Grants, in Part, the Motion to Strike.**

7          Elster moves to strike paragraphs 22 through 25 of the Complaint, on the basis that they

8    contain confidential settlement information, and it submits a declaration to support that assertion.

9    (Declaration of James Allan, ¶¶ 4-8.)  GOS contends that the statements addressed in the

10   Complaint were made during the course of a commercial meeting, but it has not provided a

11   declaration to support that statement.

12         Federal Rule of Evidence 408 prohibits the use of "conduct or a statement made during

13   compromise negotiations about the claim," when such conduct or a statement is used "to prove or

14   disprove the validity or amount of a disputed claim[.]"  Fed. R. Evid. 408(2).

15         Although, in general, the Court should accept the allegations in the Complaint as true, the

16   Allan declaration stands unrebutted.  Accordingly, the Court concludes that Elster has made a

17   sufficient showing that the statements and information contained in paragraph 22, lines 15-24, and

18   paragraph 23 are confidential settlement communications, and it shall strike them on that basis.

19   GOS shall not include those allegations in the amended complaint permitted by this Order.  The

20   Court also notes that its ruling should not be construed as precluding GOS from seeking to admit

21   these statements or other evidence on this issue as the litigation progresses.

22         Elster also argues that paragraphs 22 through 25 are immaterial, because they refer to

23   alleged misrepresentations, and GOS's sole claim for relief is for breach of contract.  GOS argues

24   that these paragraphs are relevant to the theory of relief discussed in the preceding section.  Based

25   on GOS's theory of the case, and with the exception noted above, the Court cannot conclude that

26

27   ─────────────────────
[3]      At the hearing, GOS also argued that Elster had a shortage of product and so provided
28   GOS with "something," without knowing whether that product would comply with the Prime
     Contract's specifications.  Those facts also are not in the Complaint.

United States District Court
Northern District of California

these allegations have absolutely no bearing on the claim for breach of contract.

Accordingly, the Court shall not strike paragraphs 22, 24 and 25 in their entirety, and it denies, in part, the motion to strike on that basis.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Elster's motion to dismiss, and it GRANTS GOS leave to amend.  The Court GRANTS, IN PART, Elster's motion to strike.  GOS shall file the amended complaint permitted by this Order by no later than January 8, 2016.  Elster shall answer or otherwise respond within the time set forth in the Federal Rules of Civil Procedure.

It is FURTHER ORDERED that the parties shall file a stipulation and proposed order selecting an ADR process and a deadline to complete ADR by December 16, 2015.

**IT IS SO ORDERED.**

Dated: December 9, 2016

_____
JEFFREY S. WHITE
United States District Judge